

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **LAURA MARIE NAIL,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:20-cv-00788-ACA** |
| | } | |
| **SOCIAL SECURITY** | } | |
| **ADMINISTRATION,** | } | |
| **COMMISSIONER,** | } | |
| | } | |
| **Defendant.** | } | |

### MEMORANDUM OPINION

Plaintiff Laura Marie Nail appeals the decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and supplemental security income.  Based on the court's review of the administrative record and the parties' briefs, the court **WILL REVERSE** the Commissioner's decision.

## I.    PROCEDURAL HISTORY

In November 2016, Ms. Nail applied for a period of disability, disability insurance benefits, and supplemental security income alleging that her disability began on August 30, 2015.  (R. at 247, 254).  The Commissioner initially denied Ms. Nail's claims (*id.* at 145–54), and Ms. Nail requested a hearing before an

Administrative Law Judge ("ALJ") (*id.* at 155).  The ALJ to whom Ms. Nail's case originally was assigned conducted an initial hearing and ordered a consultative examination.  (R. at 15, 63–83).  After that examination, Ms. Nail's case was assigned to a different ALJ.  That ALJ conducted a supplemental hearing and issued an unfavorable decision.  (R. at 12–62).  The Appeals Council denied Ms. Nail's request for review (*id.* at 1), making the Commissioner's decision final and ripe for the court's judicial review, 42 U.S.C. §§ 405(g), 1383(c).

## II.    STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted).  "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted).  The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Winschel*, 631 F.3d at 1178 (quotation marks omitted).  The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings."

*Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

## III.  ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Nail had not engaged in substantial gainful activity since her alleged onset date of August 30, 2015. (R. at 18). The ALJ found that Ms. Nail's degenerative disc disease, lumbar radiculopathy, and fractures of the

right wrist and left clavicle were severe impairments, but that her rib fractures, depression, and anxiety were non-severe impairments. (*Id.*). The ALJ also found that Ms. Nail's hand numbness was not a medically determinable impairment. (*Id.*). The ALJ then concluded that Ms. Nail does not suffer from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (R. at 19).

After considering the evidence of record, the ALJ determined that Ms. Nail has the residual functional capacity to lift 20 pounds occasionally and ten pounds frequently; sit, stand, and walk for at least six hours in an 8-hour work day; and push and pull as much as she can lift and carry. (*Id.*). The ALJ concluded that Ms. Nail also can frequently lift overhead on both sides; frequently handle items with her right hand; and occasionally climb ramps and stairs, stoop, kneel, crawl, and crouch. (*Id.*). The ALJ found that Ms. Nail cannot climb ladders, ropes, or scaffolding, and that she can never work at unprotected heights or with moving mechanical parts, but that she can work in extreme heat, cold, and vibrations on a limited basis. (R. at 19).

Based on this residual functional capacity, the ALJ found that Ms. Nail can perform her past relevant work as a bookkeeper. (*Id.* at 23). Accordingly, the ALJ determined that Ms. Nail has not been under a disability, as defined in the Social Security Act, from her alleged onset date through the date of the decision. (*Id.* at 23–24).

## IV.   DISCUSSION

Ms. Nail argues that the court should reverse and remand the Commissioner's decision because the ALJ:  (1) did not give proper weight to the opinions of her treating physician or the agency's consultative examiner and (2) did not adequately explain why she rejected certain portions of the state agency consultant's opinion. (Doc. 11 at 3–13; Doc. 14 at 1–4).   Because Ms. Nail's second argument is dispositive and requires remand, the court does not address Ms. Nail's first argument.

In evaluating Ms. Nail's residual functional capacity, the ALJ considered a number of medical opinions, including that of state agency consultant Dr. Thomas G. Amason.  (R. at 22; *see also id.* at 88–95; 134–37).   Dr. Amason reviewed the evidence available in support of Ms. Nail's claims through December 2016.  (R. 88–95; 134–37).   Among other restrictions, Dr. Amason opined that Ms. Nail could only occasionally handle objects with her right hand and arm due to somewhat decreased range of motion, strength, and grip strength and previous surgery to repair her broken wrist.  (*Id.* at 94, 136).   The ALJ assigned "good weight" to Dr. Amason's opinions. (R. at 22).   The ALJ noted that "Dr. Amason did not have the benefit of personally examining" Ms. Nail or reviewing more recent medical evidence" but found that his "opinions are generally consistent with the evidence received at the initial level." (*Id.*).

Ms. Nail argues that the ALJ committed reversible error because although the ALJ gave "good weight" to Dr. Amason's opinion, the ALJ did not incorporate Dr. Amason's occasional handling limitation into Ms. Nail's residual functional capacity and the ALJ did not mention or explain why she rejected this portion of Dr. Amason's opinion.  (Doc. 11 at 11; Doc. 14 at 2–3).  Ms. Nail further contends that the error is not harmless because if she can only occasionally handle—instead of frequently as the ALJ determined—then, as the vocational expert testified, she cannot return to her relevant work as a bookkeeper which requires the ability to frequently handle.  (Doc. 11 at 11; see r. at 52).

In determining a claimant's residual functional capacity assessment, an ALJ "must always consider and address medical source opinions."  SSR 96-8p, 1996 WL 374184, at *7.  In addition, if the residual functional capacity "assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  *Id.*; *see also Winschel*, 631 F.3d at 1179 ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.").  Here, despite giving "good weight" to Dr. Amason's opinion, the ALJ does not reference Dr. Amason's occasional handling restriction or explain why the ALJ rejected that opinion and instead determined that Ms. Nail could frequently handle items with her right hand—a finding that conflicts with Dr. Amason's opinion.

The Commissioner responds that other evidence in the record does not support Dr. Amason's occasional handling limitation.  (Doc. 13 at 13–14).  Even if true, the ALJ did not compare Dr. Amason's occasional handling limitation with any other evidence in the record, and she offered no explanation or justification for rejecting Dr. Amason's opinion about Ms. Nail's handling limitation.  While it is possible that the ALJ considered and rejected Dr. Amason's opinion that Ms. Nail can occasionally handle, "without clearly articulated grounds for such a rejection," the court "cannot determine whether the ALJ's conclusions were rational and supported by substantial evidence."  *Winschel*, 631 F.3d at 1179; *see also* SSR 96-8p.  Accordingly, the court must remand.

## V.     CONCLUSION

The court **WILL REVERSE** the Commissioner's decision and **WILL REMAND** for further proceedings consistent with this memorandum opinion.  The court will enter a separate order consistent with this opinion.

**DONE** and **ORDERED** this April 27, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE